**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| **BRIAN DUNNIGAN**, | § | |
| | § | Civil Action No. _____ |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **THOMAS P. ORLANDO**, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Brian R. Dunnigan ("Mr. Dunnigan"), by and through undersigned counsel, hereby files this Complaint and alleges as follows:

**I.     Preliminary Statement**

1.     This is a civil rights action under 42 U.S.C. § 1983 against Sergeant Thomas P. Orlando of the Ogunquit Police Department for the unjustified deployment of an electroshock weapon ("Taser") against Mr. Dunnigan on the evening of June 26, 2024, on Shore Road in Ogunquit, Maine. At the moment of deployment, Mr. Dunnigan was standing more than six feet from Sgt. Orlando, with his hands in his pockets, unarmed, stationary, and offering nothing but verbal noncompliance with Sgt. Orlando's command to lie on the ground. Mr. Dunnigan had also informed Sgt. Orlando — while Sgt. Orlando's Taser was drawn and aimed at his chest — that he had a cardiac condition that placed him at heightened medical risk from a Taser deployment. Sgt. Orlando deployed the Taser anyway. The deployment violated Mr. Dunnigan's clearly established Fourth Amendment right to be free from excessive force.

**II.     Parties**

2.     Plaintiff Brian R. Dunnigan is an adult United States citizen residing in the State of Maine.

1

3.     Defendant Thomas P. Orlando is, and at all times relevant to this Complaint was, employed by the Ogunquit Police Department as a Sergeant. He is sued in his individual capacity for actions taken under color of state law.

## III.     Jurisdiction and Venue

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), which grant jurisdiction over civil actions, like this one, brought to redress the deprivation under color of state law of rights secured by the Constitution of the United States and vindicated through 42 U.S.C. § 1983.

5.     This Court has personal jurisdiction over Sgt. Orlando because this lawsuit arises out of his contacts with the State of Maine — namely, his deployment of a Taser against Mr. Dunnigan in Ogunquit, Maine, while acting in the course and scope of his employment as a sergeant of the Ogunquit Police Department.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all the events and omissions giving rise to this action occurred within this District.

## IV.     Factual Allegations

### Sgt. Orlando and Sgt. Cummings Respond to a Citizen Complaint of a Disturbance That Has Already Ended

7.     On June 26, 2024, at approximately 8:33 p.m., Sgt. Orlando and Sgt. Thomas J. Cummings IV of the Ogunquit Police Department were dispatched to the area of Shore Road near the corner of Beach Street in Ogunquit, Maine, in response to a citizen complaint of a disturbance.

8.     The reporting parties alleged that Mr. Dunnigan had pushed them at a crosswalk.

9.     By the time the officers arrived, the underlying interaction between Mr. Dunnigan and the reporting parties had ended. There was, in Sgt. Orlando's words, "no active fighting or disturbance," and the reporting parties were standing apart from Mr. Dunnigan.

10.    Sgt. Cummings spoke with the reporting parties, who informed him that they did not wish to pursue any charges.

11.    Sgt. Orlando spoke with Mr. Dunnigan. In that conversation, Mr. Dunnigan was verbally but not physically noncompliant.

12.    While talking to his wife via his Apple Watch, Mr. Dunnigan used coarse language to describe Sgt. Orlando and Sgt. Cummings.

13.    Mr. Dunnigan did not convey any threats of violence to either officer.

14.    Sgt. Orlando threatened to cite Mr. Dunnigan for disorderly conduct on account of Mr. Dunnigan's coarse language.

15.    Sgt. Orlando took his finger and, pointing at Mr. Dunnigan's Apple Watch, poked Mr. Dunnigan in the arm. Mr. Dunnigan did not react to the poke.

16.    At no point during the encounter did Mr. Dunnigan strike, kick, or cause any physical contact with Sgt. Orlando, Sgt. Cummings, or any other person.

17.    At no point during the encounter did Mr. Dunnigan brandish, draw, or threaten any person with a weapon. He was unarmed.

### *The Situation Appears to De-Escalate*

18.    After several minutes of conversation, Mr. Dunnigan was standing facing Sgt. Orlando with his arms folded across his chest, continuing to speak to Sgt. Orlando in the same verbally insolent but nonviolent tone he had used throughout the preceding interaction.

19.    While Mr. Dunnigan stood there with his arms folded, Sgt. Orlando placed his open right palm on Mr. Dunnigan's chest and pushed him backward.

20.    In response to Sgt. Orlando's push, Mr. Dunnigan placed his hands in the pockets of his pants.

*Sgt. Orlando Draws His Taser, Aims It at Mr. Dunnigan,*
*and Learns of Mr. Dunnigan's Cardiac Condition*

21.     Sgt. Orlando then took two steps backward, drew his Taser, and aimed it at Mr. Dunnigan's chest.

22.     At the time Sgt. Orlando drew his Taser, he was approximately five feet away from Mr. Dunnigan.

23.     Mr. Dunnigan's hands remained in his pockets when the Taser was drawn.

24.     Sgt. Orlando ordered Mr. Dunnigan to get on the ground. Mr. Dunnigan verbally refused, and explained, while Sgt. Orlando's Taser was drawn and aimed at his chest, that he had a cardiac condition and could not safely be tased.

25.     After a few seconds, Mr. Dunnigan removed his hands from his pockets, gestured upward into the empty space between himself and Sgt. Orlando with his right arm, and spoke about his intention to bring a lawsuit. He did not move toward Sgt. Orlando.

26.     Mr. Dunnigan then took a few steps backward, moving farther away from Sgt. Orlando.

27.     Sgt. Orlando repeated his order to get on the ground. Mr. Dunnigan again verbally refused and again explained that he had a cardiac condition.

28.     Mr. Dunnigan then placed his hands back into his pockets.

*Sgt. Orlando Deploys His Taser*

29.     With Mr. Dunnigan stationary, with Mr. Dunnigan's hands back in his pockets, with Mr. Dunnigan more than six feet away, and with the warning of Mr. Dunnigan's cardiac condition fresh in his ears, Sgt. Orlando deployed his Taser against Mr. Dunnigan.

30.     At the moment of that deployment: (a) Mr. Dunnigan's hands were in his pockets; (b) Mr. Dunnigan was at least six feet away from Sgt. Orlando; (c) Mr. Dunnigan was unarmed;

4

(d) Mr. Dunnigan had not struck, kicked, or made any physical contact with any officer at any point during the encounter; (e) Mr. Dunnigan had not advanced on, lunged at, or moved toward Sgt. Orlando at any point in the seconds preceding the deployment; (f) the reporting parties had told the responding officers that they did not wish to press charges arising from the underlying disturbance; (g) Sgt. Cummings was present and available as backup, and a Wells Police Department unit had also been requested; and (h) Sgt. Orlando had been told, just moments earlier, that Mr. Dunnigan had a cardiac condition that placed him at medical risk if tased.

31.    Sgt. Orlando's first Taser cartridge did not establish a good electrical connection.

32.    Sgt. Orlando then deployed a second cartridge, which made an effective connection, causing Mr. Dunnigan to fall to the ground, striking the curb and the shoulder of Shore Road.

33.    The Taser deployment was not necessary to prevent flight.

34.    The Taser deployment was not necessary to prevent harm to officers or others.

35.    The Taser deployment was not necessary to overcome present physical resistance.

36.    The Taser deployment was not the result of a split-second decision wherein Sgt. Orlando lacked adequate opportunity to deliberate about whether and how to detain Mr. Dunnigan.

37.    Any reasonable officer in Sgt. Orlando's position would have known that the deployment of a Taser under these circumstances was unconstitutionally excessive.

### *Mr. Dunnigan's Resulting Injuries*

38.    As a direct and proximate result of Sgt. Orlando's deployment of the Taser and the resulting fall to the pavement, Mr. Dunnigan suffered serious physical injuries, including a left elbow fractured in three places, a fractured right wrist, and severe damage to his Triangular Fibrocartilage Complex.

39. Mr. Dunnigan was transported by ambulance from the scene to Southern Maine Health Care in Biddeford, Maine, for emergency medical evaluation and treatment.

40. As a further direct and proximate result of Sgt. Orlando's Taser deployment, Mr. Dunnigan continues to experience pain, soreness, and diminished functionality of the wrist, as well as emotional distress, mental anguish, and post-traumatic stress disorder. He has incurred, and will continue to incur, the need for and cost of medical care and treatment, lost income and earning capacity, and other compensable harms in an amount to be proven at trial.

*Mr. Dunnigan's Subsequent Conviction Does Not Bar This Action*

41. Following the events of June 26, 2025, Mr. Dunnigan was charged with various offenses. Charges of operating under the influence, reckless conduct, and assault against the reporting parties were ultimately dismissed.

42. Mr. Dunnigan indicated a desire to pursue charges of assault against the reporting parties, but he ultimately chose not to do so.

43. Two charges were not dismissed: one count of refusing to submit to arrest and one count of disorderly conduct. Mr. Dunnigan entered guilty pleas to these counts.

44. The factual basis for Mr. Dunnigan's convictions did not rest on any conduct occurring at the time of Sgt. Orlando's drawing or deployment of the Taser. The conviction rested on conduct occurring either entirely before Sgt. Orlando drew the Taser or entirely after the deployment of the second Taser cartridge, such that any judgment in this action will not imply the invalidity of either conviction.

## V. Claims for Relief

### COUNT I: 42 U.S.C. § 1983 (EXCESSIVE FORCE / 4TH AND 14TH AMENDMENTS)

45. Plaintiff incorporates by reference paragraphs 1 through 44 of this Complaint.

46. At all times relevant to this Complaint, Sgt. Orlando was acting under color of the law of the State of Maine and of the Town of Ogunquit.

47. Mr. Dunnigan enjoyed at all relevant times a clearly established Fourth Amendment right to be free from the use of objectively unreasonable force in the course of a seizure of his person.

48. Sgt. Orlando's deployment of his Taser against Mr. Dunnigan effected a seizure of Mr. Dunnigan within the meaning of the Fourth Amendment.

49. Sgt. Orlando's deployment of the Taser was objectively unreasonable under the totality of the circumstances.

50. It was clearly established at the time of Sgt. Orlando's deployment of the Taser that the conduct alleged in this Complaint violated the Fourth Amendment. Controlling First Circuit law establishes that the use of significant force, including a Taser, against a person who is "largely compliant" and presents no "significant 'active resistance' or threat" is excessive within the meaning of the Fourth Amendment. *Parker v. Gerrish*, 547 F.3d 1, 10 (1st Cir. 2008). And it is clearly established that the unlawfulness of increased force on a suspect no longer offering resistance "is readily apparent even without clarifying caselaw." *Jennings v. Jones*, 499 F.3d 2, 17 (1st Cir. 2007).

51. An objectively reasonable officer in Sgt. Orlando's position would have known that the deployment of a Taser, against an unarmed, stationary, hands-in-pockets person standing more than six feet away, who had just informed the officer of a cardiac condition, in the presence of a backup officer and with another officer en route, was unconstitutionally excessive force.

52. Sgt. Orlando had no justification—including, but not limited to, justification arising from self-defense, defense of others, prevention of flight, or a need to overcome present physical

7

resistance—that may have permitted his deployment of a Taser against Mr. Dunnigan under these circumstances.

53.     Sgt. Orlando's actions were knowing and willful and were undertaken with reckless or callous disregard of Mr. Dunnigan's federally protected constitutional rights, justifying an award of punitive damages.

54.     Sgt. Orlando's deployment of the Taser against Mr. Dunnigan was the actual and proximate cause of Mr. Dunnigan's bodily injury, pain and suffering, ongoing physical impairment, medical expenses, lost income and earning capacity, emotional distress, and other harms, in an amount to be proven at trial.

## VI.    Jury Trial Demanded

Mr. Dunnigan demands a trial by jury on all claims and issues so triable.

## VII.    Prayer for Relief

WHEREFORE, based on the foregoing allegations, Mr. Dunnigan respectfully requests that this Court enter judgment in his favor and against Sgt. Orlando consisting of (a) compensatory damages in a full and fair amount to be determined by a jury; (b) punitive damages in an amount to be determined by a jury; (c) reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute; (d) pre- and post-judgment interest; and (e) all other relief authorized at law or in equity.

**Date**:  May 26, 2026

/s/ *Bruce W. Hepler*
Bruce W. Hepler, Bar No. 8007
75 Pearl Street, Suite 201
Portland, ME 04101
Telephone: (207) 772-2525
brucehepler1@gmail.com

Kyle Singhal*
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W., Suite 200

Washington, DC 20006
Telephone: (202) 769-4080
kyle@hopwoodsinghal.com
*pending admission pro hac vice*

*Attorneys for Plaintiff*